# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN THOMAS BAGLEY, | § | |
| (TDCJ-CID #652853) | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION H-04-2371 |
| | § | |
| LIEUTENANT R. QUADA, *et al.,* | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND OPINION

John Thomas Bagley, an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division, sued in June 2004, alleging that prison officials denied him access to the courts, retaliated against him, denied him due process, and conspired against him because of his race. Bagley, proceeding *pro se* and *in forma pauperis*, sues R. Quada, a TDCJ Lieutenant; Demetrie Phipps, a Correctional Officer IV; Jennifer Ragan, a Correctional Officer IV; and D. Luker, a disciplinary captain.

On July 1, 2004, this court dismissed Bagley's complaint as barred by the three-strikes provision of 28 U.S.C. § 1915(g). (Docket Entry No. 2). On January 11, 2005, this court reinstated the case after Bagley paid the filing fee. (Docket Entry No. 9). Bagley complied with this court's order to file a more definite statement on February 17, 2005. (Docket Entry No. 11). The threshold issue is whether Bagley's claims may proceed.

I.      **Bagley's Allegations**

In June 2002, the TDCJ-CID issued revised Administrative Directive 3.72, which was to take effect on September 1, 2002.  The new policy limited the amount of storage space for each inmate and required inmates to mail their excess legal and personal property to a location away from the TDCJ-CID before the revised policy took effect.  The revised policy permitted inmates needing additional legal storage space to request it from prison officials.

During the week of June 2, 2002, Bagley asked the warden for additional storage space for legal materials.  Bagley alleges that Thaler, Simmons, and Rich never responded to the requests and that other TDCJ officials gave contradictory responses.

Bagley gathered his legal materials and placed them into legal envelopes.  He alleges that on September 23, 2002, the mail room clerk refused to take the envelopes or tell Bagley the amount of postage due.  The property room clerk took the envelopes and said that she would mail them, but they were not mailed.  Bagley continued to request additional storage space, but he received no response.

Bagley alleges that on November 14, 2002, Lieutenant Quada and Officer Phipps took his remaining property and destroyed it.  The materials included legal papers that he allegedly needed to litigate criminal appeals and civil actions.  Bagley alleges that Lieutenant Quada and Officer Phipps placed the "excess material" in seven bags, which Officer Ragan then had destroyed.

Bagley complains that the following material was destroyed:

• Documents showing that the prosecutor did not give Bagley or his attorney a copy of the indictment in a criminal case that resulted in a conviction.  Bagley intended to file those documents in 3:03-CV-1731D.

• Copies of grievances Bagley was going to file.

• Copies of the Congressional Globe Record from the 1860's and 1870's pertaining to 18 U.S.C. §§ 242 and 241, 42 U.S.C. § 1981, and the Civil Rights Acts from the 1800's and 1960's.

• Personal mail log record for the years 1994 to 2002.

Bagley asserts that his pending appeals and civil rights actions were dismissed because he "did not [have] the documents that [he] needed to submit to the courts to sustain them." (Docket Entry No. 11, Plaintiff's More Definite Statement, p. 10).

On November 14, 2002, Bagley was charged with a disciplinary violation for having 32 priority mail envelopes full of materials, many relating to inactive cases, and 20 books, stored in an unauthorized manner.  The charge included storing material in the administrative segregation visitation area, which was unauthorized.  Bagley alleges that the charge was obviously false because he was held in an administrative segregation cell and did not have access to the administrative segregation visitation area.  (Docket Entry No. 11, Plaintiff's More Definite Statement, Attachment, p. 1).

Bagley received notice of the charges on November 19, 2002.  The disciplinary hearing was held on November 20, 2002.  Bagley complains that the hearing officer did not

3

allow him to speak at the hearing.  Bagley was convicted and punished with a loss of commissary privileges for 15 days, extra work duty, and a verbal reprimand.  Bagley received a partial copy of the disciplinary hearing report.

In this suit, Bagley seeks an injunction prohibiting prison officials from destroying his property or forcing him to mail it away from the prison.  He also seeks the return of all property seized on November 14, 2002.[1]

## II.    Standard of Review

Under 28 U.S.C. § 1915A, federal courts are authorized to review as soon as practicable a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.  The court is to dismiss any portion of the complaint that is frivolous, malicious, or fails to state a claim on which relief may be granted, or that seeks monetary relief from a defendant who is immune from

---

[1] In Civil Action Number 4:02-4489, Bagley filed a petition for a writ of habeas corpus, in which he asked the respondent to stop engaging in race-based retaliatory conduct.  Bagley also sought the return of his property.  This court found that although Bagley labeled his pleading a petition for a writ of habeas corpus, the substance of his pleading was in the nature of a civil rights complaint.  Because of Bagley's frequent, frivolous filings in the federal courts, and his failure to pay the filing fee, the court dismissed Bagley's *in forma pauperis* complaint under the three-strikes provision of 28 U.S.C. § 1915(g).

In Civil Action Number 4:03-183, Bagley raised the same claims for deprivation of legal property that he raises here.  The court granted the motion to quash for failure to effect proper service, filed by Defendants Stringfellow, Ed Owens, and D. Stump.  The claims against R. C. Thaler, Timothy Simmons, R. Quada, Officer Fisher, Officer Kelly, Officer Stewart, Officer Williams, Ms. Pittman, D. Phipps, and D. Luker were dismissed for failure to effect proper service.  The court granted the motion to dismiss for failure to state a claim filed by Jimmy Alford, Bill Lewis, Janie Cockrell, Linda Richey, and Kelly Ward.

such relief.  Section 1915A governs this suit.  *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (section 1915A applies even when a prisoner has paid the required filing fee).

A complaint is frivolous if it lacks an arguable basis in law or fact.  *See Denton v. Hernandez,* 504 U.S. 25, 31 (1992); *Richardson v. Spurlock,* 260 F.3d 495, 498 (5th Cir. 2001) (citing *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997)).  "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist."  *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998) (quoting *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997)).

## III.    The Denial of Access to Courts Claim

Prisoners have a constitutionally protected right of access to the courts.  *Brewer v. Wilkinson,* 3 F.3d 816, 820 (5th Cir. 1993), *cert. denied,* 510 U.S. 1123 (1994).  Inmates are "not guarantee[d] the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims."  *Lewis,* 518 U.S. at 355.  A prisoner is guaranteed the capability of bringing a legal challenge to a conviction, a sentence, or to conditions of confinement.  *Id.* at 356.  Access to courts must be "adequate, effective, and meaningful."  *See Bounds,* 430 U.S. at 824-25.  The State must furnish indigent inmates with pen and paper to draft legal documents, stamps to mail them, and adequate opportunity to conduct legal research through access to adequate law libraries or access to "persons trained in the law" or other persons who can provide legal assistance. *Id.* at 824-28.

5

Prison officials have considerable discretion in providing resources to prisoners for the purpose of allowing them to file nonfrivolous legal claims. *See Lewis,* 518 U.S. at 356. Restrictions on direct access to legal materials may be warranted when prison security is involved. *See Eason v. Thaler,* 73 F.3d 1322, 1329 (5th Cir. 1996). Arbitrary limitations and restrictions on access to legal materials, without the assistance of persons trained in the law, is unconstitutional. *See Eason v. Thaler,* 14 F.3d 8, 9-10 (5th Cir. 1994) (holding that allegations of a total denial of all access to the prison law library for twenty-five days following a prison riot stated a constitutional violation).

To prevail on a denial of access to the courts claim under section 1983, a plaintiff must show that he has been prejudiced in connection with an identifiable past, pending, or proposed legal proceeding. *See Lewis v. Casey,* 518 U.S. 343, 349-53 (1996). In his response to an order for a more definite statement, Bagley states that on November 14, 2002, when prison officials confiscated his legal property, he was working on eleven actions in state and federal court. (Docket Entry No. 11, Plaintiff's More Definite Statement, p. 9). Each of these actions is examined below.

(1)    Civil Action Number H-99-4271. The record shows that on April 11, 2000, the federal court dismissed this case for want of prosecution because Bagley refused to comply with an order requiring him to file a more definite statement. After the case was closed, Bagley filed an objection to the order dismissing the case, in May 2000; a letter in June 2000; a letter requesting that the dismissal be set aside, in July 2000; an affidavit in February 2001; a response in February 2001; and a request for a docket sheet in March 2003.

6

The record shows that this civil action was closed more than two years before the confiscation of the legal property occurred.  Bagley has not shown prejudice resulting from the confiscation of legal property.

(2)     Petition number 01-10793, a petition for a writ of *certiorari* pending in the United States Supreme Court.  The record shows that in this case, filed in the Northern District of Texas, Bagley complained of race-based and class-based discrimination; conspiracy; denial of equal access; a denial of constitutional rights; and fraud.  Bagley sued a bank; two bank officers; the parole department; and four prison officials.  The Northern District of Texas dismissed Bagley's complaint as frivolous.  The Fifth Circuit dismissed the appeal as frivolous on December 11, 2001 and warned that future frivolous appeals would result in the imposition of sanctions.  On October 7, 2002, the United States Supreme Court denied Bagley's application for leave to proceed *in forma pauperis* and dismissed the petition for a writ of *certiorari* under Supreme Court Rule 39.8, which provides for the denial of pauper status if a petition for a writ of *certiorari* is frivolous.  Bagley does not explain how the confiscation of property in November 2002 prevented him from litigating this lawsuit.

(3)     Petition number 01-8486, a petition for a writ of *certiorari* in the United States Supreme Court.  The record shows that in this case, filed in the Northern District of Texas, Bagley had complained that the prosecutor and trial judge engaged in a racially-motivated conspiracy to convict him.  The court dismissed Bagley's complaint under 28 U.S.C. § 1915A(b)(1).  On December 13, 2000, the Fifth Circuit affirmed the judgment.  On April 22, 2002, the United States Supreme Court denied Bagley's petition for a writ of *certiorari*.

Bagley does not explain how the confiscation of property in November 2002 prejudiced his position as a litigant in this lawsuit.

(4)     Civil Action Number H-00-3561. Bagley sued in federal court, complaining of the use of excessive force on September 13, 1998.  The record shows that on November 21, 2000, the court dismissed the case as frivolous.  The case was reopened on December 19, 2002, to consider Bagley's claim of a racially-based use of force.  On June 24, 2003, this court dismissed the remaining claim.  The record shows that this case was closed nearly two years before the confiscation of legal property.  After the case was reinstated on December 19, 2002, Bagley filed a request to add parties and for summons on December 31, 2002. Bagley has not demonstrated how his ability to litigate this lawsuit was prejudiced by the confiscation of property on November 14, 2002.

(5)     Civil Action Number H-01-3380.  Bagley sued in federal court, alleging that on January 26, 1999, a nurse was deliberately indifferent to his serious medical needs when she flushed wax from his ears.  The record shows that Bagley filed a motion for emergency injunctive relief on November 18, 2002; a motion for counsel on December 10, 2002; a demand for jury trial on December 10, 2002; a response to the answer on December 10, 2002; a correction of error notice on December 23, 2002; a request for injunctive relief on December 23, 2002; court notification of error on December 26, 2002; a request for emergency injunctive relief on December 26, 2002; and "TDCJ Commandments of Prisoner Abuses" on December 26, 2002.  On December 24, 2003, the court granted the defendant's motion for summary judgment on the ground that the claims were barred by limitations.

Bagley has not shown how the confiscation of legal property prejudiced his ability to litigate this lawsuit.  The record shows that Bagley filed several pleadings in the days and weeks immediately following the confiscation of property in November 2002.

(6)     Civil Action Number 3:02-CV-1199.  On June 10, 2002, Bagley filed a petition for a writ of mandamus in the Northern District of Texas against the state trial judge.  In December 2001, Bagley filed a motion for state postconviction relief and asked for an evidentiary hearing on his claim that the indictment in the criminal case against him had been improperly amended.  The trial judge had not yet ruled on the motion.  Bagley sought a petition for a writ of mandamus from the Texas Court of Criminal Appeals, which was denied.  Bagley sought federal mandamus relief to compel a ruling by the state court.  The Northern District of Texas dismissed the complaint summarily as lacking an arguable basis in law and as frivolous.[2]  Bagley does not explain how the confiscation of property in November 2002 prevented him from litigating this lawsuit.

(7)     Civil Action Number 3:02-CV-2331.  Bagley filed this petition for a writ of habeas corpus in federal court on October 18, 2002.  Bagley complained that the trial judge refused to rule on his request for an evidentiary hearing in state court.  On June 27, 2003, the Dallas Division of the Northern District of Texas adopted the Magistrate Judge's recommendation that the petition be dismissed for failure to state a cognizable claim for

---

[2]  Bagley made a similar claim in 3:01-124.  On June 27, 2003 the Dallas Division of the Northern District of Texas adopted the United States Magistrate Judge's recommendation that the petition be dismissed for failure to state a ground for habeas relief.

habeas relief.  Bagley does not explain how the confiscation of property in November 2002 prevented him from litigating this lawsuit.

(8)     Civil Action Number 1:03-CV-463.  Bagley initially filed this application for postconviction relief in the Beaumont Division of the Eastern District of Texas.  On July 23, 2003, this pleading was docketed as a petition for a writ of habeas corpus.  On July 31, 2003, the case was transferred to the Northern District of Texas, where it was docketed as Civil Action Number 3:03-1923. Bagley does not explain how the confiscation of property in November 2002 prevented him from litigating this lawsuit.

(9)     Civil Action Number 3:03-CV-1731.  Bagley filed this petition for a writ of habeas corpus in federal court on July 29, 2003.  Bagley complained that in the state court criminal case against him, he was not given a copy of the amended indictment; the State failed to meet its burden of proof; the jury charge was defective; he was illegally arrested; and the voir dire was improper.  On December 31, 2003, the Dallas Division of the Northern District of Texas dismissed Bagley's petition as successive.  In the present suit, Bagley complains that one of the legal documents confiscated and destroyed showed that the prosecutor did not give Bagley or his attorney a copy of the indictment.  Bagley raised this claim in his habeas petition, which was dismissed as successive.  The petition was not dismissed because a legal document was confiscated and destroyed in November 2002. Bagley has not shown that his position as a litigant was prejudiced.

(10)    Civil Action Number 3:03-CV-1923.  On July 23, 2003, Bagley filed another federal habeas petition raising the claim of the defective indictment.  He argued that he

10

"[w]as put in jail each indictment was for something that had not happen yet was in furture. [sic] I don't know of time travel!  three time come with indictment and three time indictment was no good!"  On September 17, 2003, Bagley filed an amended complaint stating: "on the date of September 13, 1993 at trial my trial counsel and I had indictments that stated the alleged offense occurred on November 11, 1993.  The prosecutors Mark Moffitt and Katherine Robinson for and prosecuted an amended indictment and never gave the defense a copy of it to prepare for trial and they will not dispute this fact."  On October 14, 2003, the Dallas Division of the Northern District of Texas adopted the United States Magistrate Judge's recommendation that the petition be dismissed as successive.  Bagley does not explain how the confiscation of property in November 2002 prevented him from litigating this lawsuit.

(11)   Civil Action Number WF93-02520-HJ, a state court application for postconviction relief.  The record shows that on October 4, 1995, the Texas Court of Criminal Appeals denied Bagley's state habeas application without written order, on findings of the trial court.  *Ex parte Bagley*, Application No. 29,392-01.  On February 7, 1996, the Texas Court of Criminal Appeals dismissed Bagley's second state habeas application as an abuse of the writ.  *Ex parte Bagley*, Application No. 29,392-02.  On September 29, 1999, the Texas Court of Criminal Appeals dismissed Bagley's third state habeas application as an abuse of the writ.  *Ex parte Bagley*, Application No. 29,392-04.  On December 15, 1999, the Texas Court of Criminal Appeals dismissed Bagley's fourth state application as an abuse of the writ.  *Ex parte Bagley*, Application No. 29,392-05.  On May 1, 2002, Bagley filed a state

court petition for a writ of mandamus.  On May 29, 2002, the Texas Court of Criminal Appeals denied it without written order.  *Ex parte Bagley*, Application No. 29,392-08.  On January 14, 2004, the Texas Court of Criminal Appeals dismissed Bagley's fifth state habeas application as an abuse of the writ.  *Ex parte Bagley*, Application No. 29,392-09.  The record shows that the Texas Court of Criminal Appeals denied Bagley's petition for a writ of mandamus on May 29, 2002, nearly six months before the confiscation of his legal property. Bagley does not explain how his position as a litigant was prejudiced by the loss of the legal materials.

This court has reviewed the pleadings, docket sheets, and opinions entered in the eleven lawsuits Bagley alleges were affected by the loss of the legal materials in November 2002.  Bagley has not shown that he has been prejudiced in connection with these legal proceedings.  *See Lewis v. Casey,* 518 U.S. 343, 349-53 (1996).  Nothing in the record shows that Bagley's position as a litigant in a specific case was prejudiced by the enforcement of the new regulation on storage of legal materials.

Bagley's access to the courts claim is dismissed as frivolous.

## IV.    The Retaliation Claim

A prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct.  *Ruiz v. Estelle*, 679 F.2d 1115 (5th Cir.), opinion amended in part and vacated in part, 688 F.2d 266 (5th Cir. 1982), *cert. denied*, 460 U.S. 1042 (1983).  Prison officials must have wide latitude in the control and discipline of inmates, but that "latitude does not encompass

conduct that infringes on an inmate's substantive constitutional rights." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (quoting *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988)). These limitations do not unduly restrict prison officials' actions legitimately motivated by concerns for prison order and discipline. *Id.*

The Fifth Circuit has recognized that "[t]he prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996), quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994), *cert. denied*, 514 U.S. 1022 (1995). To state a valid claim for retaliation under section 1983, a prisoner must allege: (1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right; (3) a retaliatory adverse act; and (4) causation. *McDonald v. Steward,* 132 F.3d 225, 231 (5th Cir. 1998).

The law is well established that prison officials may not retaliate against an inmate for using the grievance system. *Jackson v. Cain*, 864 F.2d 1235, 1249 (5th Cir. 1989). An inmate must allege more than his personal belief that he was the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), *cert. denied*, 522 U.S. 995 (1997). Mere conclusory allegations of retaliation are not enough. *Moody v. Baker*, 857 F.2d 256, 258 (5th Cir. 1988). A prisoner must show that "but for" a retaliatory motive, the defendants would not have engaged in the action. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert.*

*denied*, 516 U.S. 1084 (1996).  A prisoner must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred.  *Id.*  With respect to the first element, that a plaintiff must show the retaliation for engaging in constitutionally-protected activity, the Fifth Circuit has made it clear that filing frivolous litigation is not constitutionally protected.  *Johnson v. Rodriguez*, 110 F.3d at 311.  The prisoner has the burden of showing that the grievances and lawsuits he filed were not frivolous.  *Johnson v. Rodriguez*, 110 F.3d at 311 n.16.  Similarly, legal research and writing for another inmate may not be the basis of a retaliation claim.  *Id.*

Bagley complains that the defendants retaliated against him for filing grievances and lawsuits by destroying his legal material.   Bagley must show that he engaged in constitutionally protected litigation activity.  Bagley states that when his legal property was confiscated, he was working on eleven lawsuits.  The court has reviewed the docket sheets, pleadings, and opinions in these lawsuits.  The detailed information as to the named parties, subject matter, arguable merit, and disposition of these lawsuits shows no violation of Bagley's constitutional right of access to the courts.  Bagley's lawsuits were dismissed as frivolous or as successive.  Frivolous litigation activity may not form the basis of a retaliation claim.  Bagley's retaliation claim fails.  *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999).

Bagley also complains that defendants retaliated against him for writ-writing activities on behalf of fellow inmates.  Bagley states that he has assisted inmates in filing grievances and lawsuits concerning abuses by prison officials.  (Docket Entry No. 11, Plaintiff's More

Definite Statement, p. 6).  Bagley has no constitutional right to provide legal assistance to other inmates.  *See Shaw v. Murphy*, 532 U.S. 223, 228 (2001); *Tighe*, 100 F.3d at 42-43. Bagley cannot assert a claim of retaliation based on his assisting other inmates with legal work.

Additionally, Bagley has not alleged a chronology of events from which retaliation may plausibly be inferred.  Bagley bases his claim of retaliation on the fact that his legal property was confiscated.   The confiscation occurred after the implementation of Administrative Directive 3.72, which limited the amount of storage space for each inmate and required inmates to send away legal property that exceeded a certain amount.  To the extent that Bagley complains of the enforcement of the new policy limiting storage, the Fifth Circuit has rejected this argument.  In *Long*, prisoners challenged this policy.  Under an earlier version of the policy, a TDC warden could permit an additional storage unit of 2.25 cubic feet capacity for storage of a prisoner's legal materials.  The regulation stated that if a prisoner's property cannot fit within these storage containers, it must either be mailed home at the inmate's expense, retrieved by approved visitors, or turned over to the prison for destruction.  In upholding the earlier version of the policy, the Fifth Circuit reasoned:

> It seems to us, as it did to the district court, highly dubious that a facially neutral prison storage space limitation of four cubic feet might in any way restrict a prisoner's exercise of constitutional rights, especially considering the obvious space limitations in a prison setting.  That each inmate possesses well over 5,000 pages of legal papers and is participating in at least five lawsuits bespeaks eloquently the current misallocation of social resources toward excessive prisoner litigation.

. . .

> Insofar as the appellants have requested punitive damages, this claim is frivolous under 28 U.S.C. § 1915(d). *Pugh v. Parish of St. Tammany*, 875 F.2d 436, 438 (5th Cir. 1989). There is no arguable basis in law or in fact for a contention that, in promulgating this facially neutral administrative directive governing prisoners' accumulation of property, any TDC official maliciously, wantonly, or oppressively violated the constitutional rights of prisoners, as would be required for the assessment of punitive damages. *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). The district court did not abuse its discretion in dismissing appellants' complaint.

*Long v. Collins*, 917 F.2d 3, 4 (5th Cir. 1990).

In a recent unpublished opinion, the Fifth Circuit found that prisoners had failed to show that A.D. 03.72, the newer version of the policy challenged in *Long*, violated the Due Process Clause. *Duplantis v. Carmona*, 2004 WL 75424, *1 (5th Cir. January 16, 2004). Bagley's claim based on the enforcement of the new policy fails.[3]

## V.    The Due Process Claim

The Supreme Court applies two standards to prison disciplinary procedures, depending on the sanction imposed and the consequences that result. *Walker v. Navarro County Jail*, 4 F.3d 410, 412 (5th Cir. 1993). A prisoner punished by solitary confinement and loss of good-time credits must receive: (1) written notice of the charges against him at

---

[3] Bagley complains that the defendants retaliated against him for his legal activities. He claims that the prison officials told him he would suffer because of his activities. (Docket Entry No. 11, Plaintiff's More Definite Statement, p.7). Bagley could argue that these comments evidence the third element of a retaliation claim, that the defendants intended to retaliate against Bagley for his exercise of a constitutional right. Bagley, however, has failed to establish the first element of a retaliation claim, that he exercised a constitutionally-protected right.

least twenty-four hours before the hearing; (2) a written statement by the fact-finders as to the evidence relied on and the reasons for the disciplinary action taken; and (3) the opportunity to call witnesses and present documentary evidence in his defense, unless these procedures would create a security risk in the particular case. *Wolff v. McDonnell,* 418 U.S. 539, 563-66 (1974). On the other hand, a short period of administrative segregation, having no effect on parole, requires an informal nonadversary evidentiary review, as long as the prisoner receives notice and an opportunity to present a statement. *Sandin v. Conner,* 515 U.S. 472 (1995). The Due Process Clause does not protect every change in the conditions of confinement that has a substantial adverse effect upon a prisoner. *Id.* at 478.

Bagley claims that the defendants falsely charged him with storing excess property in an unauthorized location. The punishments Bagley received changed the conditions of his confinement, but did not give rise to a due process claim. *Madison v. Parker,* 104 F.3d 765, 768 (5th Cir. 1997). Bagley was entitled to an informal nonadversary evidentiary review, with notice and an opportunity to present a statement. Bagley was provided with the process that was due.

## VI.  The Conspiracy Claim

Liberally construed, Bagley asserts that prison officials engaged in a race-based conspiracy when they confiscated his legal materials. The elements of civil conspiracy are: an actual violation of a right protected under § 1983 and actions taken in concert by the defendants with the specific intent to violate the aforementioned right. *Cinel v. Connick,* 15 F.3d 1338, 1343 (5th Cir.), *cert. denied,* 513 U.S. 868 (1994). A plaintiff who asserts a

conspiracy claim under the civil rights statutes must plead the "operative facts" showing an illegal agreement; "bald allegations" of an agreement do not suffice. *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987); *Arsenaux v. Roberts*, 726 F.2d 1022, 1023-24 (5th Cir. 1982). The plaintiff may, and often must, rely on circumstantial evidence, because conspiracies "are rarely evidenced by explicit agreements." *Mack v. Newton*, 737 F.2d 1343, 1350-51 (5th Cir. 1984) (quoting *Michelman v. Clark-Schwebel Fiber Glass Corp.*, 534 F.2d 1036, 1043 (2d Cir. 1976)).

Bagley has not alleged facts showing illegal acts or that the defendants entered into an agreement to commit an illegal act. *Kerr v. Lyford,* 171 F.3d 330, 341-42 (5th Cir. 1999) (finding that the appellants' civil conspiracy claim was contingent on the success of their malicious prosecution claim). Bagley's bald allegations that the defendants conspired to violate his First Amendment right to seek legal redress do not state a constitutional violation. "It remains necessary to prove an actual deprivation of a constitutional right; a conspiracy to deprive is insufficient." *Gillum v. City of Kerrville,* 3 F.3d 117, 123 (5th Cir. 1993) (quoting *Villanueva v. McInnis,* 723 F.2d 414, 418 (5th Cir. 1984)).

Bagley's conspiracy claim is dismissed as frivolous.

## VII.   Conclusion

The action filed by John Thomas Bagley (TDCJ-CID Inmate #652853) lacks an arguable basis in law. His claims are dismissed with prejudice under 28 U.S.C. § 1915A(b)(1). Any remaining pending motions are denied as moot.

The Clerk is directed to provide a copy to the parties; the TDCJ - Office of the General Counsel, P.O. Box 13084, Austin, Texas, 78711, Fax Number (512) 936-2159; and Clerk of Court, United States District Court for the Eastern District of Texas, 211 West Ferguson, Tyler, Texas  75702, attention: Betty Parker.

SIGNED on October 25, 2005, at Houston, Texas.

Lee H. Rosenthal
United States District Judge